ADAM PAUL LAXALT
  Attorney General
ERIN L. ALBRIGHT, Bar No. 9953
  Deputy Attorney General
State of Nevada
Bureau of Litigation
Public Safety Division
100 N. Carson Street
Carson City, NV  89701-4717
Tel:  (775) 684-1257
E-mail: ealbright@ag.nv.gov

*Attorneys for Defendants*
*Stacy Barret, Jay Barth, James Dzurenda,*
*Dwight Neven, Jason Satterly and*
*Anthony Warren*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN MELNIK,<br><br>              Plaintiff,<br><br>vs.<br><br>JAMES DZURENDA, et al.,<br><br>              Defendants. | Case No.  3:16-cv-00670-MMD-VPC<br><br>**MOTION FOR SUMMARY JUDGMENT** |

Defendants, Stacy Barret, Jay Barth, James Dzurenda, Dwight Neven, Jason Satterly and Anthony Warren, by and through counsel, Adam Paul Laxalt, Attorney General of the State of Nevada, and Erin L. Albright, Deputy Attorney General, hereby file their Motion for Summary Judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

John Melnik (Inmate Melnik) is an inmate incarcerated in the Nevada Department of Corrections (NDOC).  Inmate Melnik filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (ECF No. 5) for events that allegedly occurred while he was housed at High Desert State Prison (HDSP) from December 10, 2014 through August 4, 2016.  (ECF No. 4 at 3-5).  This Court's Screening Order (ECF No. 4) allowed Inmate Melnik to proceed with a Fourteenth Amendment right to due process claim against Defendants Barrett, Barth, Dzurenda, Neven, Satterly and Warren (NDOC

1

Employees). *Id*. at 7. The disciplinary segregation served by Inmate Melnik does not implicate a protected liberty interest entitling him to due process. Since disciplinary confinement alone does not implicate a protected liberty interest, Inmate Melnik does not implicate a protected liberty interest entitling him to due process. *Sandin v. Connor*, 515 U.S. 472, 486 (1995). The NDOC Employees are entitled to summary judgment.

## II. UNDISPUTED RELEVANT FACTUAL BACKGROUND

On November 10, 2014, NDOC staff received information from an anonymous source that Inmate Melnik was inappropriately using the postal service to introduce methamphetamines into HDSP. Exh. A[1] at 1.

On November 16, 2014, Inmate Melnik was placed on the NDOC mail monitor system to further investigate the matter. *Id*.

On December 10, 2014, NDOC staff at HDSP opened a letter addressed to Inmate Melnik from a "Boo Saunders." *Id*. The envelope contained a five page document labeled "Notice of Privacy Practices for Golden Home Health Nevada." *Id.* Page three of the document contained a pouch, which tested positive for methamphetamines. *Id*. Two grams of methamphetamine were recovered. *Id*. A Notice of Charges (NOC) for unauthorized use of equipment or mail and possession/sale of intoxicants in violation of MJ 31, was prepared and Inmate Melnik was placed in administrative segregation pending the charges. *Id*.

On February 10, 2015, a disciplinary hearing was held on the pending charges outlined in the NOC. *Id*. at 5. During the hearing, Inmate Melnik stated he was set up by the Aryan Warriors because he refused to partake in illegal activity. *Id*. Inmate Melnik was asked if he wanted to present witnesses and he declined. *Id*. at 7. Further, at no time during the hearing did Inmate Melnik request to use the two envelopes as evidence. *Id*. at 5-7.

Based on the officer's report, the video of the drug test, the envelopes, the two grams of methamphetamine and Inmate Melnik's statement, the hearing officer found some evidence to support a finding of guilty on the MJ 31 charge. *Id*. at 5. Inmate Melnik was sentenced to eighteen (18) months in disciplinary segregation. *Id*. at 6.

---

[1] Exhibit A is authenticated by the declaration of Jennifer Nash.

2

### III. LEGAL AUTHORITY

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment should be granted where a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents attached to a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n,* 784 F.2d 1018, 1020 (9th Cir. 1986). The moving party has the initial burden of demonstrating that summary judgment is proper, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970), and factual inferences should be drawn viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

To defeat summary judgment, the nonmoving party cannot rely on conclusory allegations. *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir. 1986). Rather, the nonmovant must present "specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmovant's evidence should be such that a "fair minded jury could return a verdict for [him or her] on the evidence presented." *Id*. at 255. In attempting to establish the existence of this factual dispute, the opposing party may not rely on the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* FED. R. CIV. P. 56(c)(1).

"Although the evidence must be viewed in a light most favorable to the opponent of the motion, and all reasonable inferences must be drawn in his favor, the inferences are limited to those upon which a reasonable jury might return a verdict." *U.S. ex rel. Anderson*, 52 F.3d at 815 (citing *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 630-31 (9th Cir. 1987)). However, "if the facts make a claim 'implausible' the non-movant must present 'more persuasive evidence than would otherwise be necessary' in order to defeat a summary judgment motion." *Id*. (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). The United States Supreme Court has stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

1  should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."
2  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

3  **IV.  LEGAL ANALYSIS**

4      **A. Inmate Melnik's Eighteen Month Stay in Disciplinary Segregation was not an Atypical and Significant Hardship**
5

6      Inmate Melnik's disciplinary hearing, which resulted in a conviction of eighteen (18) months in
7  disciplinary segregation, did not invoke a state-created liberty interest protected under the Due Process
8  Clause.

9      The Fourteenth Amendment provides: "No state shall … deprive any person of life, liberty, or
10 property, without due process of law." U.S. Const. amend XIV, § 1. A plaintiff asserting a Fourteenth
11 Amendment due process claim related to disciplinary action that leads to his confinement in
12 disciplinary segregation must first establish that he has been deprived of a protected liberty interest in
13 order to invoke the Due Process Clause's protections. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005);
14 *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). Once the plaintiff has established that one
15 of these interests is at stake, the court's analysis turns to whether the inmate suffered a denial of
16 adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations
17 omitted).

18     "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the
19 word 'liberty,' … or it may arise from an expectation or interest created by state laws or policies[.]"
20 *Wilkinson*, 545 U.S. at 221 (citing *Vitek v. Jones,* 445 U.S. 480, 493-94 (1980) (finding a liberty interest
21 in avoiding involuntary psychiatric treatment and transfer to mental institution under the Due Process
22 Clause itself) and *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974) (finding a liberty interest in
23 avoiding withdrawal of state-created system of good-time credits)).

24     First, under the Constitution, a liberty interest is implicated only when the conditions of
25 confinement exceed "the sentence in such an unexpected manner as to give rise to protection by the
26 Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (internal
27 quotation marks and citation omitted). The Ninth Circuit has recognized that "only the most extreme
28 changes in the conditions of confinement" such as "involuntary commitment to a mental institution"

and "forced administration of psychotropic drugs" have been found to "directly invoke the protections of the Due Process Clause." *Chappell*, 706 F.3d at 1063 (citing *Vitek*, 445 U.S. at 493-94; *Washington v. Harper,* 494 U.S. 210, 221-22 (1990)). Other circumstances where a liberty interest has been found include revocation of probation, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) or parole status (not just mere denial of parole), *Morrissey v. Brewer*, 408 U.S. 471 (1972) and labeling an inmate as a sex offender, *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997). Inmate Melnik does not claim that any of these directly invoked protections were violated.

Therefore, to be successful, Inmate Melnik must hope this Court concludes that there is a state-created liberty interest. *See Wilkinson*, 545 U.S. at 221-22 (citing *Meachum v. Fano*, 427 U.S. at 225) ("the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."); *Chappell*, 706 F.3d at 1063 (quoting *Montayne v. Haymes*, 427 U.S. 236, 242 (1976)) ("'As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'").

"A state may create a liberty interest through statutes, prison regulations, and policies." *Chappell*, 706 F.3d at 1063 (citing *Wilkinson*, 545 U.S. at 222 and *Neal*, 131 F.3d at 827). This, however, is "subject to the important limitations set forth in *Sandin v. Conner*[.]" *Wilkinson*, 545 U.S. at 222 (citation and quotation marks omitted). *Sandin* rejected the previously employed approach for evaluating whether there was a state-created liberty interest which looked at the mandatory language of prison regulations. *See id.* (citing *Sandin v. Conner,* 515 U.S. 472, 481 (1995)). Instead, *Sandin* directed that it was more important to look at the "nature of the deprivation." *Id.* (citing *Sandin*, 515 U.S. at 481).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Thus, a change in the conditions of confinement, such as Inmate Melnik's confinement to disciplinary segregation, only rises to the level of a protected liberty interest if it amounts to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the protection

by the Due Process Clause of its own force …, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Placement in punitive segregation alone does not make the conditions of confinement an "atypical and significant hardship." *Sandin*, 515 U.S. at 485; *Chappell*, 706 F.3d at 1063 (quoting *Meachum*, 427 U.S. at 224).

The Supreme Court has declined to establish a "baseline from which to measure what is atypical and significant in any particular prison system." *Wilkinson*, 545 U.S. at 223 (noting inconsistent conclusions among the circuits, but concluding that assignment to Ohio's "Supermax" facility satisfied this standard "under any plausible baseline"). The Ninth Circuit has stated that in order to determine whether a particular form of restraint imposes "atypical and significant hardship," a court considers a condition or combination of conditions or factors on a case by case basis, rather than invoking a single standard." *Chappell*, 706 F.3d at 1064 (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (confirming that the inquiry is "context-dependent" and requires "fact by fact consideration").

At least three factors have been used to guide this inquiry: (1) "whether the conditions of confinement mirrored those imposed upon inmates in analogous *discretionary* confinement settings;" (2) "the duration and intensity of the conditions of confinement;" and (3) "[w]hether the change in confinement would inevitably affect the duration of the [prisoner's] sentence." *Chappell*, 706 F.3d at 1064-65 (italics original, internal quotation marks and citation omitted). As such, "*Sandin* requires a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).

Inmate Melnik does not allege that he faced an atypical and significant hardship implicating a protected liberty interest when he served eighteen months in disciplinary segregation as a result of the charges stemming from the December 10, 2014 incident. (*See* ECF No. 5). Instead, he presumes he has a protected liberty interest that entitles him to the procedural protections set forth in *Wolff*. *Id*. A review of the complaint, demonstrates that it does not cite conditions that were different in disciplinary segregation when compared to general population. *Id*. Disciplinary confinement alone does not

1 implicate a protected liberty interest. *Sandin*, 515 U.S. 472, 486 (1995). Since Inmate Melnik has
2 failed to demonstrate how eighteen months in disciplinary segregation constitutes an atypical,
3 significant deprivation, there is no protected liberty interest entitling him to the procedural protections
4 set forth in *Wolff*.

### B. Defendants are Entitled to Qualified Immunity

Whether governmental employees are entitled to qualified immunity is a question of law subject to *de novo* review before this Court. *Devereaux v. Perez*, 218 F.3d 1045, 1051 (9th Cir. 2000) (citing *Elder v. Holloway,* 510 U.S. 510, 516 (1994); *Thompson v. Mahre,* 110 F.3d 716, 721 (9th Cir. 1997)). Like summary judgment motions, "[t]his court must assume the relevant facts in the light most favorable to the plaintiff, and then determine whether the defendants are nonetheless entitled to qualified immunity as a matter of law." *Devereaux,* 218 F.3d at 1051 (citing *Moran v. Washington*, 147 F.3d 839, 944 (9th Cir. 1998)).

> The plaintiff bears the burden of demonstrating that the underlying right was clearly established at the time of the alleged misconduct. If the plaintiff meets this burden then the officials must prove that "their conduct was reasonable under the applicable standards even though it might have violated the plaintiff's constitutional rights." *Devereaux*, *supra* (citing *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991) and *Benigni v. City of Hemet*, 879 F.2d 473, 480 (9th Cir. 1998)).

It is a long-standing principle that governmental officials are shielded from civil liability under the doctrine of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" "Therefore, *regardless of whether the constitutional violation occurred,* the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (emphasis in original; internal citations omitted).

///
///

7

When conducting the qualified immunity analysis, courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).

The second inquiry, whether the constitutional right in question was clearly established, is an objective inquiry that turns on whether a reasonable official in the position of the defendant knew or should have known at the time of the events in question that his or her conduct was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cty.,* 693 F.3d 896, 915 (9th Cir. 2012). Only where a governmental official's belief as to the constitutionality of his or her conduct is "plainly incompetent" is qualified immunity unavailable. *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013) (per curiam). Governmental officials are entitled to high deference when making this determination, requiring the Court to assess whether qualified immunity is appropriate "'in light of the specific context of the case.'" *Anderson,* 483 U.S. at 640, *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)).

In determining "'whether a [constitutional] right was clearly established,'" this Court is to survey the law within this Circuit and under Supreme Court precedent "'at the time of the alleged act.'" *Perez v. United States*, 103 F. Supp. 3d 1180, 1208 (S.D. Cal. 2015) (quoting *Cmty. House*, *Inc*. *v. City of Boise*, 623 F.3d 945, 967 (2010), citing *Bryan v. MacPherson*, 630 F.3d 805, 933 (9th Cir. 2010)). Only in situations where there is no precedent regarding the qualified immunity question at issue should this Court look to "other circuits and district courts to ascertain whether the law is clearly established." *Cmty. House*, 623 F.3d at 967 (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)).

If forced to look at cases outside of the Ninth Circuit or the Supreme Court, this Court should take into account whether there is disagreement among judges considering whether a particular law was clearly established. *Perez*, 103 F. Supp. 3d at 1208 (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 378   In either case, the precedent must decide the constitutional questions "beyond debate" for a court to hold that a government official is not entitled to qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson*, 483 U.S. at 640; *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

///

1   On January 9, 2017, the Supreme Court unanimously reiterated what is meant by clearly established. There, in the case of *White v. Pauly*, 137 S.Ct. 548 (per curiam) (2017), the Court instructed as follows:

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."
>
> The panel majority misunderstood the "clearly established" analysis: It failed to identify a case where [the government officials] acting under similar circumstances . . . [were] held to have violated the [Constitution]. 137 S.Ct. 551–552 (internal citations omitted).

This Court had the opportunity to further explain the dictates of *White* in its May 12, 2017 decision in *S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017). There, this Court "acknowledge[d] the Supreme Court's recent frustration with failures to heed its holdings," and that the Court had "'repeatedly told courts—and [this Court] in particular—not to define clearly established law at a high level of generality.'" *Id*. at 1015 (quoting *County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774–76 (2015)). This Court then stated that it heard the Supreme Court "loud and clear," and noted that "[b]efore a court can impose liability on [a government employee, it] must identify precedent as of the date" of the alleged constitutional deprivation, "that would put [the government employee] on clear notice that" the individual's action "in [this] particular circumstance[] would" violate the constitution. *Id*. at 1015-1016.

The burden of proving whether the particular right in question was clearly established rests with the non-governmental party. *Greene v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009), *vacated in part on other grounds*, 661 F.3d 1201 (9th Cir. 2011) (citing *Galen v. Cty. of L.A.*, 477 F.3d 652, 655 (9th Cir. 2007)); *see also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006).

Inmate Melnik cannot meet this burden.

With regard to the first prong, i.e., whether a constitutional right existed and was violated, the case law is clear that the eighteen months of disciplinary segregation served by Inmate Melnik was not an atypical and significant hardship entitling him to the procedural protections of due process.

In addition, assuming *arguendo* this Court disagrees and finds there could potentially be liability on behalf of the NDOC Employees, given the state of the law on this issue, as addressed fully above, it cannot be said that Defendants were on "clear notice" that placement in disciplinary segregation for eighteen months entitled Inmate Melnik to the procedural protections of due process. Accordingly, Defendants are also entitled to qualified immunity under the second prong.

## V.   CONCLUSION

Since disciplinary confinement alone does not implicate a protected liberty interest, Inmate Melnik did not face an atypical and significant hardship in disciplinary entitling him to the procedural protections of due process. *Sandin*, 515 U.S. at 486.   Therefore, Defendants respectfully request this Court grant their Motion for Summary Judgment.

DATED this 16th day of April, 2018.

ADAM PAUL LAXALT
Attorney General

By: _____
ERIN L. ALBRIGHT
Deputy Attorney General
State of Nevada
Bureau of Litigation
Public Safety Division

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 16th day of April, 2018, I caused to be deposited for mailing in the U.S. Mail a copy of the foregoing, **MOTION FOR SUMMARY JUDGMENT**, to the following:

John Melnik, #30576
High Desert State Prison
P.O. Box 650
Indian Springs, NV 89070

*/s/ Laurie Penny*
An employee of the
Office of the Attorney General