UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN MELNIK,<br><br>               Plaintiff,<br><br>v.<br><br><br>JAMES DZURENDA, *et al.,*<br>               Defendants. | 3:16-cv-00670-MMD-CLB<br><br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE[1]** |

This case involves a civil rights action filed by Plaintiff John Melnik ("Melnik") against Defendants NDOC Director James Dzurenda, Warden Dwight Neven, Sergeant Jay Barth, Senior Correctional Officer Anthony Warren, CERT Officer and Investigator Jason Satterly, and Caseworker Stacey Barrett (collectively referred to as "Defendants"). Currently pending before the court is Defendants' motion for summary judgment. (ECF No. 55.) Melnik opposed the motion and filed a cross-motion for summary judgment (ECF Nos. 60, 61), and Defendants replied (ECF No. 63). For the reasons stated below, the court recommends that Defendants' motion for summary judgment (ECF No. 55) be denied, and Melnik's cross-motion for summary judgment (ECF No. 61) be denied.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

Melnik is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At the time relevant to this action, Melnik was incarcerated at the High Desert State Prison ("HDSP"). (ECF No. 5). Proceeding *pro se*, Melnik filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging a procedural due process claim against Defendants. (*Id.*)

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

According to Melnik's Complaint (ECF No. 5), the alleged events giving rise to his claim are as follows: On December 10, 2014, Melnik was sent to administrative segregation and placed under investigation due to drugs being found in two envelopes allegedly addressed to Melnik via institutional mail. (*Id.* at 6). On January 29, 2015, Melnik was served with two Notice of Charges ("NOCs"). (*Id.*) Melnik was charged with MJ 31, Unauthorized Use of Equipment and Mail, and MJ 53, Possession/Sale of Intoxicants. (*Id.*) The NOCs were read and served by Defendant Warren, with Defendant Barth in attendance, supervising. (*Id.*) Melnik requested photocopies of the envelopes allegedly addressed to him, front and back, and Warren and Barth said they would see what they could do. (*Id.*)

On January 29, 2015, Melnik sent a kite to Barth again requesting a copy of the envelopes, but received no reply. (*Id.*) On February 10, 2015, Melnik was taken to a disciplinary hearing with Barth as the hearing officer. (*Id.*) Melnik again requested copies of the envelopes. (*Id.*) Melnik cited A.R. 707.e.2 to Barth, which states:

> In addition to the Notice of Charges, the inmate shall receive copies of any evidentiary documents, which the Hearing Officer considers, except in cases where non-disclosure has been approved under the "Confidential Information" provision of this code.

(*Id.* at 7). The return address and returnee's name was included on the NOCs. (*Id.* at 9). As the envelopes were addressed to Melnik, and no confidential information or informant was indicated to be on the envelopes, Barth directed Melnik to contact Defendant Satterly, so that Melnik could use the evidence on appeal. (*Id.* at 7). Melnik was found guilty of two counts of MJ31 and sanctioned to two eighteen-month sentences in disciplinary segregation. (*Id.*)

On February 10, 2015, Melnik submitted a kite to Satterly, requesting the evidence, i.e., copies of the envelopes. (*Id.*) A few days later, Satterly interviewed Melnik, and during the interview, Melnik again requested copies of the envelopes. (*Id.*) Satterly informed Melnik that he needed approval to remove the evidence from the evidence vault. (*Id.*) Satterly never got back to Melnik with an answer. (*Id.*)

Between the interview with Satterly and March 19, 2015, Melink asked Defendant Barrett on multiple occasions if she could contact Satterly regarding copies of the envelopes. (*Id.* at 7-8).

On March 19, 2015, Melnik again sent a written request to Satterly asking for copies of the envelopes. (*Id.* at 8).

Between March 19, 2015, and March 31, 2015, Melnik again spoke to Barrett seeking her assistance in getting copies of the envelopes. (*Id.*) On March 31, 2015, Barrett informed Melnik that Satterly told her once the evidence enters the evidence vault that it cannot be removed. (*Id.*) Melnik showed Barrett A.R. 707.e.2, and after reading the code, Barrett said she would check into getting Melnik the envelopes. (*Id.*) Barrett then informed Melnik that he was being transferred to Ely State Prison ("ESP"), and on April 29, 2015, Melnik was transferred to ESP and placed in disciplinary segregation. (*Id.*)

On March 12, 2016, Melnik filed his disciplinary appeal, and on March 31, 2015, Melnik filed an informal grievance concerning his lack of access to the evidence against him. (*Id.*) Both were denied. (*Id.*) The denial of the grievance was answered by Barrett, saying that the reason Melnik was denied the requested evidence was based on Operation Procedure ("OP") 414.02, stating that "CERT will be responsible for evidence preservation and storage." (*Id.*) Also, Barrett erroneously stated that AR 707.11 states that inmates are not entitled to evidence found by NDOC staff. (*Id.* at 9). Melnik has been in disciplinary segregation since that time, and also lost parole opportunities. (*Id.* at 5).

On May 23, 2016, Melnik filed a first level grievance, pointing out that OP 414.02 was not relevant to the disciplinary process, which was governed by A.R. 707. On August 4, 2016, Melnik received a response from Defendant Neven, stating that the reason Melnik was denied a copy of the evidence was due to the Confidential Informant Clause, AR 711.9. (*Id.* at 9).

On August 4, 2016, Melnik filed a second level grievance stating that the confidential informant clause did not apply in his case because the envelopes had been addressed to Melnik and the return address and name of returnee had been provided in the NOCs. At the time the Complaint was filed, Melnik had not received a response to the second level grievance, which was to be responded to by Defendant Dzurenda. (*Id.* at 9-10).

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order, allowing Melnik to proceed with a claim for procedural due process violations. (ECF No. 4). On June 27, 2019, Defendants filed their motion for summary judgment asserting they are entitled to summary judgment because failure to provide Melnik with copies of envelopes utilized during his prison disciplinary hearings does not violate his due process rights, and, additionally, Defendants are entitled to qualified immunity. (ECF No. 55). Melnik opposed and filed a cross-motion for summary judgment (ECF Nos. 60, 61), and Defendants replied (ECF No. 63).

## II.  LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

4

Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary

judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

#### A.   Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Melnik*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

#### B.   Fourteenth Amendment Procedural Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, to invoke the procedural protections of due process, a plaintiff must first identify the protected liberty interest that is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Liberty interests may arise from the Constitution or from an expectation created by state statutes and prison regulations. *Id.*; *Neal v.*

*Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997). In the prison setting, a liberty interest arises from the Constitution when the conditions of confinement "exceed[] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . ." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A liberty interest created by the state is generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

Courts analyze procedural due process claims in two parts. First, the court must determine whether the plaintiff possessed a protected interest. If so, the court next compares the required level of process with the procedures the defendant observed. *Brown v. Ore. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). To prevail on a claim, plaintiff must have a protected liberty interest, and the defendant's procedures must be constitutionally inadequate. *Id.*

When an inmate faces disciplinary charges, due process requires that the inmate receive: (1) a written statement at least twenty-four (24) hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-570 (1974). "When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).

"Chief among the due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense before the disciplinary board." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Ordinarily, the right to present evidence is basic to a fair hearing. *Id.* However, "the prisoner's right to call witnesses and present evidence in disciplinary proceedings could be denied if granting

the request would be 'unduly hazardous to institutional safety or correctional goals.'" *Id.* (citing *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (citing *Wolff*, 418 U.S. at 566)); *see also Hughes v. Rowe*, 449 U.S. 5, 9, and n. 6 (1980). While "prison officials may not arbitrarily deny an inmate's request to present witnesses or documentary evidence", *see Graham v. Baughman*, 772 F.2d 441, 444 (8th Cir.1985); *accord Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir.1982), "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses [or produce documentary evidence] that may create a risk of reprisal or undermine authority...." *Ponte*, 471 U.S. at 496. The burden of proving adequate justification for denial of a request to present witnesses or produce documentary evidence rests with the prison officials. *Id.* at 499; *Graham*, 772 F.2d at 445; *Bostic v. Carlson*, 884 F.2d 1267, 1273 (9th Cir. 1989). "[I]f state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny." *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994). Thus, an inmate's right to due process is violated only if he is not provided with process sufficient to meet the standards outlined in *Wolff*. *Id.*

Defendants' motion for summary judgment argues Defendants are entitled to judgment as a matter of law on Melnik's due process claim. (ECF No. 55). Defendants assert that while NDOC regulations may have entitled Melnik to receive a copy of the envelopes utilized during the prison disciplinary hearings, due process protections under *Wolff* do not require production of copies of envelopes utilized during a disciplinary hearing. (*Id.* at 4-6). Defendants claim that Melnik was provided all the procedural safeguards required by the due process clause because Melnik read and received the two relevant notice of charges, which put him on notice of the charges, he was permitted to present evidence in his defense, and he was allowed to seek legal assistance. (*Id.* at 5).

Melnik argues that his inability to present documentary evidence at the disciplinary hearings violated his due process rights. (ECF No. 60 at 12-13).

Here, Defendants do not argue Melnik does not have a protected liberty interest giving rise to procedural protections in connection with his disciplinary proceedings. Instead they argue that he had constitutionally sufficient disciplinary proceedings.

Melnik's main contention is that because he was not provided copies of the evidence used against him, i.e. the envelopes, his due process rights were violated. (ECF No. 5). Defendants argue that because the Notice of Charges contained the letter senders' information, Melnik would not have obtained any additional information if he had received copies of the envelopes. (ECF No. 55 at 8). Defendants argue that because Melnik was read the Notice of Charges, he was placed on notice that he was accused of receiving methamphetamines in the mail, and therefore Melnik was afforded due process. (*Id.* at 5). However, a review of the two Notice of Charges shows that they contained information about only one of the two envelopes. (*See* ECF No. 55-1 at 7). The first Notice of Charges discusses a letter that was addressed to Melnik, from "Boo Saunders" of North Las Vegas, Nevada. (*Id.*) Defendants do not attach copies of the envelopes in question to their Motion for Summary Judgment.[2]

As Melnik points out in his Cross-Motion for Summary Judgment, this case is analogous with another case from this District, *Jones v. Drain*, 3:05-CV-0278-PMP(RAM), 2008 WL 8209061 (D. Nev. Feb. 6, 2008). In *Jones*, the Court found defendant's refusal to produce a letter used to discipline plaintiff violated plaintiff's due process rights accorded under *Wolff* to "present documentary evidence" and "marshal the facts in his defense." *Id.* at *8 (citing *Young v. Kann*, 926 F.2d 1396, 1402 (3rd Cir. 1991) (citing *Wolff*, 418 U.S. at 564)). The Court relied upon a Third Circuit case, *Young v. Kann*, which found that a disciplinary officer violated the inmate's due process

---

[2]  Defendants do attach copies of the envelopes to a withdrawn Motion for Summary Judgment filed on April 16, 2018. (*See* ECF No. 19-1). A review of the envelopes shows that while one envelope was sent by "Boo Saunders," the second envelope was sent by "Sandy L. Green." (*Id.* at 9, 13). There is no mention of "Sandy L. Green" in either of the Notice of Charges and Melnik does not seem to be aware of this second letter sender. (*See* ECF Nos. 55-1, 55-2).

1 rights by refusing to produce a letter written by the inmate allegedly threatening his
2 cellmate, even though the letter formed part of the basis for disciplinary charges.
3 *Young*, 926 F.2d at 1400-1403.

4 Similar to both *Young* and *Jones*, Defendants offer no security justifications for
5 the refusal to provide copies of the envelopes, which Melnik requested production of in
6 order to refute the charges against him, and the envelopes were specifically admitted as
7 evidence against him at the disciplinary hearings.  Further, Defendants argument that
8 the Notice of Charges adequately placed Melnik on notice of the charges and the
9 evidence used against him, such that copies of the envelopes were unnecessary, is
10 false.  The Notice of Charges did not contain information about *both* of the envelopes,
11 and it does not appear Melnik was made aware that the letters were sent by two
12 separate senders.

13 Accordingly, viewing the evidence in the light most favorable to Melnik, a
14 reasonable jury could determine that the Defendants' refusal to produce copies of the
15 envelopes violated Melnik's due process rights accorded under *Wolff* to "present
16 documentary evidence" and "marshal the facts in his defense."  *Wolff*, 418 U.S. at 564.
17 Thus, because genuine issues of material fact exist as to whether Melnik's due process
18 rights were violated, the court recommends that Defendants' Motion for Summary
19 Judgment (ECF No. 55) and Melnik's Cross-Motion for Summary Judgment (ECF No.
20 61) be denied.

21 **C.  Qualified Immunity**

22 Defendants assert that even if a constitutional violation exists, they are entitled to
23 qualified immunity because there is no evidence that the Defendants knowingly violated
24 a clearly established right of Melnik.  (ECF No. 55 at 6-8).  Specifically, Defendants
25 argue that they are unaware of any clearly established law that indicates an inmate "has
26 an unfettered constitutional right to review copies of evidence used at a disciplinary
27 hearing." (*Id.* at 8).

28

  The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

  When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42. A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

  "[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037

(9th Cir. 2018). Because the Court finds that genuine issues of material fact exist as to whether Melnik's constitutional rights were violated, the court declines to address the "clearly established" prong at this time.

## IV. CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 55) be denied and Melnik's cross-motion for summary judgment (ECF No. 61) be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 55) be **DENIED**; and

**IT IS FURTHER RECOMMENED** that Melnik's cross-motion for summary judgment (ECF No. 61) be **DENIED.**

**DATED**: December 2, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**